FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

*In re:*                                             :
                                                     :
Northeast Industrial Development                     :    Case No. 13-37619 (CGM)
Corporation,                                         :    Chapter 11
                                                     :
                                         *Debtor*    :
-------------------------------------------------------- x
Northeast Industrial Development                     :
Corporation,                                         :
                                                     :
                                        *Plaintiff*  :
                                                     :
                                                     :    Adversary No. 14-09005
*v.*                                                 :
                                                     :
ParkStone Capital Partners, LLC, *et al.*,           :
                                        *Defendants* :
-------------------------------------------------------- x

### MEMORANDUM DECISION AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW GRANTING THE PARKSTONE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

**A P P E A R A N C E S :**

GENOVA & MALIN
*Attorneys for Plaintiff Northeast Industrial Development Corporation*
1136 Route 9
Wappingers Falls, New York 12590
By:    Thomas Genova, Esq.
       Andrea B. Malin, Esq.

DEILY & GLASTETTER, LLP
*Attorneys for Defendants ParkStone Capital Partners, LLC,*
    *ParkStone Capital Partners II, LLC, and Jonathan Childs*
8 Thurlow Terrace
Albany, New York 12203
By:    Jason A. Little, Esq.
       Joann Sternheimer, Esq.

OXMAN TULIS KIRKPATRICK WHYATT & GEIGER, LLP
*Attorneys for Defendant Vincent Rippa*
120 Bloomingdale Road
Suite 100
White Plains, New York 10605
By:    Stuart E. Kahan, Esq.

**CECELIA G. MORRIS**
**CHIEF U.S. BANKRUPTCY JUDGE**

Before the Court is the motion of defendants ParkStone Capital Partners, LLC ("ParkStone"), ParkStone Capital Partners II, LLC ("ParkStone II"), and Jonathan Childs (together, the "ParkStone Defendants") for: (i) dismissal of this adversary proceeding for lack of subject-matter jurisdiction; (ii) abstention; (iii) dismissal for failure to state a claim; and, in the alternative, (iv) judgment on the pleadings. For the reasons set forth below, the Court grants the motion in part and recommends that the United States District Court for the Southern District of New York (the "District Court") adopt the following proposed findings of fact and conclusions of law resolving the remaining issues.

## BACKGROUND

A.    **The Note and the Debtor's Default**

Northeast Industrial Development Corporation (the "Debtor") is the owner of commercial real property located in Newburgh, New York (the "Property"). Compl. ¶ 4, No. 14-09005, ECF No. 1. The Property is subdivided into four lots: three partially-developed lots containing parking, curbing, water and sewer hookups, and high-technology communications upgrades (the "Partially-Developed Lots") and one fully-developed lot containing an 18,600 square foot office building (the "Building"). *Id.*

On February 12, 2008, the Debtor and Hudson Valley Bank ("HVB") entered into a Construction Loan Mortgage Note (the "Note") in the original principal amount of $2.8 million. *Id.* ¶ 5. To secure the Debtor's obligations under the Note, the Debtor executed a Construction Loan Mortgage and Security Agreement (the "Mortgage") granting HVB a security interest in the Property. *Id.* Copies of the Note and Mortgage are attached to the Complaint as Exhibit A. *See id.* Ex. A.

Among other things, the Note provides that interest will accrue on the outstanding

principal balance at a rate equal to the "Prime Rate" (defined in the Note) plus 1.0%. Note ¶ 1

(Compl. Ex. A). In the event of default, the Mortgage provides that the interest rate will increase

to the Prime Rate plus 6.0%. Mortg. ¶ 1.8 (Compl. Ex. A). For each month that the default is not

cured, the interest rate will increase by an additional 1.0% until it reaches the maximum rate

permitted by law. *Id.* Both the Note and Mortgage require modification of the terms of those

instruments to be in writing and signed. *See* Note ¶ 27 ("[A]ny writings not signed by [the]

[l]ender or oral statements or conversations . . . inconsistent with the provisions of this Note . . .

shall be null and void."); Mortg. ¶ 9.1 ("No . . . modification . . . hereof[] shall be valid unless in

writing, dated and signed by the party against whom such . . . modification . . . is sought to be

enforced.").

In 2010, due to the Debtor's default under the Note, HVB commenced a foreclosure

action in the Supreme Court of Orange County, New York. Compl. ¶ 6.

**B.    <u>ParkStone's Acquisition of the Note</u>**

At the time the foreclosure proceeding was commenced, the Debtor had listed the

Property for sale through a broker, Sculpture Realty, Inc. ("SRI"). *Id.* ¶ 7. According to the

Complaint, defendants Jonathan Childs and Vincent Rippa contacted SRI to inquire about

purchasing the Property from the Debtor. *Id.* ¶ 8. Those two defendants then attempted to use

SRI to "gain access to the premises" and "obtain confidential information" about the Property

"for the purpose of determining the financial status of the [Debtor]." *Id.* At the time, the Debtor

was unaware that Mr. Childs was the principal of ParkStone or that Mr. Rippa was Mr. Childs'

father-in-law. *Id.*

According to the Debtor, rather than pursue the acquisition of the Property through SRI, Mr. Childs and Mr. Rippa instead caused ParkStone to purchase the Note and Mortgage from HVB. *Id.* ¶ 9. After several months of little or no activity in the foreclosure proceeding, ParkStone requested that the state court appoint a receiver over the Property. *Id.* ¶¶ 10–11. At ParkStone's request, the state court appointed Mr. Rippa as receiver (the "Receiver"), despite the fact that he was both the father-in-law of Mr. Childs and had been involved in the acquisition of the Note and Mortgage from HVB. *Id.* ¶ 11. According to the Debtor, ParkStone did not disclose these facts to the state court. *Id.*

In March 2012, with the Receiver in place, the Debtor's principal, ParkStone, and the Receiver agreed to a forbearance of the foreclosure action and the terms of a loan workout agreement (the "Loan Workout Agreement"). *Id.* ¶ 12. The parties agreed that ParkStone would provide additional funding for the purpose of completing construction of the then-unfinished Building. *Id.* The Debtor would be responsible for completing the construction and finding a suitable tenant. *Id.* For its part, ParkStone agreed to accept payment of $1.5 million in full satisfaction of the Note, provided that such amount was to be paid by May 4, 2012. *Id.* The Debtor thereafter secured a tenant for the Building, and the parties agreed to a further forbearance of the loan for a total of 24 months from the date the Building was certified for occupancy. *Id.* ¶ 13. During that time, the parties agreed that the Debtor would be permitted to pay off the Note for a total of $2.2 million. *Id.*

According to the Debtor, ParkStone delayed finalizing the paperwork for the Loan Workout Agreement until after construction was completed and a certificate of occupancy was issued in March 2013. *Id.* ¶¶ 14–17. At that time, ParkStone produced paperwork that allegedly bore no resemblance to the original terms of the Loan Workout Agreement. *Id.* Specifically, the

"new" terms would have required the Debtor to pay $2.5 million if paid before June 30, 2013;

$2.6 million if paid before September 30, 2013; $2.7 million if paid before January 31, 2014; and

$2.9 million if paid after January 31, 2014 but before September 30, 2014. *Id.* ¶ 17. The terms

would also have required the Debtor to waive any defenses to the foreclosure. *Id.* ¶ 17 n.2. The

Debtor considered these terms unacceptable. *Id.*

The Debtor also contends that the Receiver mismanaged the Property during its

negotiations with ParkStone. The Receiver collected more than $200,000 in rent from the new

tenant, but did not pay the $116,000 commission that was due to SRI for finding the tenant or the

nearly $129,000 that was owed to subcontractors and materialmen that the Debtor engaged to

complete the construction of the Building. *Id.* ¶¶ 18–22. The Receiver also failed to apply for a

property tax reduction from the City of Newburgh, which the Debtor contends would have saved

it "hundreds of thousands of dollars" over a five-year period. *Id.* ¶ 22.

C.      **Proceedings in the Bankruptcy Case**

On December 2, 2013, the Debtor filed this chapter 11 case. *See* Pet., No. 13-37619, ECF

No. 1. Along with its petition, the Debtor filed a motion to authorize the use of cash collateral

and to compel turnover by the Receiver pursuant to § 543(b) of the Bankruptcy Code. *See* Mot.,

No. 13-37619, ECF No. 2. After a hearing on January 28, 2014, the Court entered an order

removing the Receiver and directing him to turn over the Property to the Debtor. *See* Order, No.

13-37619, ECF No. 52.

ParkStone filed a proof of claim for $4,454,867. *See* Proof of Cl. 1, No. 13-37619, Cl.

No. 9. According to the proof of claim, the amount owed to ParkStone consists of: $2,420,624 in

unpaid principal; $611,879.96 in unpaid interest at the contractual, non-default rate; $836,460.07

in unpaid interest at the default rate; $562,043.41 in loan advances; and $23,859.56 in "other

costs." *Id.* at 3. According to the Debtor's schedules, the Property is worth only $3.575 million.

Am. Scheds. 1 (Sched. A), No. 13-37619, ECF No. 39.

On February 28, 2014, the Debtor filed a disclosure statement (the "Disclosure

Statement") pursuant to § 1125 of the Bankruptcy Code. *See* Discl. Stmt., No. 13-37619, ECF

No. 67. A copy of the Debtor's proposed chapter 11 plan (the "Plan") is attached as an exhibit to

the Disclosure Statement. *See id.* Ex. B. The Plan proposes to create six classes of claims, of

which three are impaired. Plan 9–12 (Discl. Stmt. Ex. B). ParkStone's impaired Class 2 claim

will be capped at $2 million and paid in full no later than December 31, 2015. *Id.* at 10–11. Prior

to that date, ParkStone will receive monthly interest-only payments at a rate of 5.25% per annum

plus additional principal payments upon the sale of any of the Partially-Developed Lots. *Id.*

According to the Disclosure Statement, "[t]he success of [this adversary proceeding] in reducing

[ParkStone's claim] . . . is vital to the successful resolution of this case and directly imparts the

feasibility of the Debtor's plan of reorganization." Discl. Stmt. 19.

**D.     The Adversary Proceeding**

      **i.     The Complaint**

On January 31, 2014, the Debtor filed a complaint (the "Complaint") against ParkStone,

ParkStone II, Mr. Childs, and the Receiver (together, the "Defendants"), initiating this adversary

proceeding. The Complaint contains six counts requesting various forms of relief against the

Defendants, including:

        a.    an award against all Defendants for false pretenses, false representation,
              and actual fraud (Count 1);

        b.    the imposition of the original terms of the Loan Workout Agreement on
              the parties (Count 2);

        c.    the imposition of a constructive contract between the parties to prevent the
              Defendants from being unjustly enriched (Count 3);

      d.      a finding that the parties have formed a joint venture (Count 4);

      e.      an award against the Receiver for his intentional and negligent conduct in mismanaging the Property (Count 5); and

      f.      disallowance of ParkStone's secured claim to the extent of the claimed default interest under the Note (Count 6).

Compl. ¶¶ 23–63. The Debtor requests an award of at least $1 million against all Defendants under Count 1 and a separate award of at least $500,000 against the Receiver under Count 5. *Id.* at 18–19. Although ParkStone II is named as a defendant, there is not a single allegation regarding ParkStone II in the Complaint, including anything concerning its connection to the Debtor and ParkStone or its role in this case.

On February 28, 2014, the ParkStone Defendants filed an answer to the Complaint. *See* Answer, No. 14-09005, ECF No. 6. The answer asserts a total of eighteen affirmative defenses, including that this matter is not a core proceeding and that the Court lacks subject-matter jurisdiction over the Debtor's claims. *Id.* ¶¶ 67–68. The answer also alleges that this Court lacks constitutional authority to adjudicate the Debtor's claims and states that the ParkStone Defendants do not consent to the entry of final orders by this Court. *Id.* ¶ 69 (citing *Stern v. Marshall*, 564 U.S. ___, 131 S. Ct. 2594 (2011) ("*Stern*")).

On March 6, 2014, the Receiver filed his answer to the Complaint. *See* Answer, No. 14-09005, ECF No. 7. In his answer, the Receiver raises many of the same affirmative defenses as the ParkStone Defendants, including that the adversary proceeding is not core, that this Court lacks subject-matter jurisdiction over the Debtor's claims, and that the Court lacks constitutional authority over the claims. *Id.* ¶¶ 67–69. The Receiver does not consent to the entry of final orders by this Court. *Id.* ¶ 69. On March 20, 2014, the Receiver also filed a jury demand. *See* Jury Demand, No. 14-09005, ECF No. 10.

On April 15, 2014, the Receiver filed a motion to withdraw the reference to the District

Court based on this Court's alleged lack of constitutional authority to enter a final order under

*Stern*. *See* Mot., No. 14-09005, ECF No. 12. The Debtor opposed the motion. *See* Opp'n, No. 14-

09005, ECF No. 17. On May 28, 2014, District Judge Nelson Roman denied the motion, stating

that the District Court "need not decide the effect of the Supreme Court's decision in [*Stern*]" at

this time, since the Bankruptcy Court "may hear the case in the first instance and recommend

proposed findings of fact and conclusions of law for final adjudication in the District Court."

*Northeast Indus. Dev. Corp. v. ParkStone Capital Partners, LLC (In re Northeast Indus. Dev.*

*Corp.)*, 511 B.R. 51, 53 (S.D.N.Y. 2014).

> **ii.    The ParkStone Defendants' Motion to Dismiss**

On April 22, 2014, the ParkStone Defendants filed a motion to dismiss the Complaint

(the "Motion to Dismiss"). *See* Mot. to Dismiss, No. 14-09005, ECF No. 14; Mem. of Law, No.

14-09005, ECF No. 15. The Motion to Dismiss raises essentially three issues with the claims

asserted against the ParkStone Defendants:

> a.    the Court lacks subject-matter jurisdiction over the claims;
>
> b.    the Court lacks constitutional authority to adjudicate and enter final orders
>       on the claims under *Stern*; and
>
> c.    each of the claims fails as a matter of law.

Mem. of Law 32–33. In light of those deficiencies, the ParkStone Defendants request that the

Court: (i) dismiss the adversary proceeding for lack of subject-matter jurisdiction; (ii) abstain

from hearing the proceeding; (iii) dismiss each of the counts against the ParkStone Defendants

for failure to state a claim; or, alternatively, (iv) award judgment for the ParkStone Defendants

on the pleadings. *Id.*

On May 9, 2014, the Debtor filed opposition to the Motion to Dismiss. *See* Opp'n, No. 14-09005, ECF No. 21. The Debtor contends that all of its claims are "core" claims which this Court has constitutional authority to finally adjudicate. *Id.* at 12–16. As to each of the counts, the Debtor also argues that it has properly pled a cause of action sufficient to survive the Motion to Dismiss. *Id.* at 5–12. Hearings on the Motion to Dismiss were held on May 20 and June 24, 2014, after which the Court took the motion under advisement.

## DISCUSSION

For the reasons discussed below, this Court dismisses Count 6 of the Complaint and recommends that the District Court consider this Memorandum Decision as proposed findings of fact and conclusions of law dismissing Counts 1, 2, 3, and 4 as against the ParkStone Defendants under Federal Rule of Civil Procedure 12(c).[1]

**A.    The Complaint Should Not Be Dismissed for Lack of Subject-Matter Jurisdiction**

      **i.    Bankruptcy Jurisdiction, *Stern*, and *Executive Benefits***

Pursuant to 28 U.S.C. § 1334, district courts have "original and exclusive jurisdiction of all cases arising under title 11." 28 U.S.C. § 1334(a). District courts also have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id.* § 1334(b). District courts may "refer" any or all of these proceedings "to the bankruptcy judges for the district." *Id.* § 157(a). In the Southern District of New York, proceedings are referred to the bankruptcy courts pursuant to the Amended Standing Order of Reference, No. M10-468, signed by Chief District Judge Loretta A. Preska on January 31, 2012. *See Gowan v. HSBC Mortg. Corp. (USA) (In re Dreier LLP)*, 2012 WL 4867376, at *2 (Bankr. S.D.N.Y. Oct. 12, 2012).

---

[1]    As set forth above, Count 5 is asserted solely against the Receiver, and is not at issue in the Motion to Dismiss. *See* Compl. ¶¶ 49–56.

Once a matter is referred, "[t]he manner in which a bankruptcy judge may act . . .

depends on the type of proceeding involved." *Stern*, 131 S. Ct. at 2603. In cases under title 11

and core proceedings that arise under title 11 or arise in cases under title 11, bankruptcy courts

may "hear and determine" the matters and "enter appropriate orders and judgments." 28 U.S.C.

§ 157(b)(1). By contrast, in noncore matters that are merely "related to" cases under title 11, the

bankruptcy court may not enter final orders, but must "submit proposed findings of fact and

conclusions of law to the district court." *Id.* § 157(c)(1). In those matters, "any final order or

judgment shall be entered by the district judge after considering the bankruptcy judge's proposed

findings and conclusions and after reviewing de novo those matters to which any party has

timely and specifically objected." *Id.*

In *Stern*, the Supreme Court held that "even though bankruptcy courts are statutorily

authorized to enter final judgment on a class of bankruptcy-related claims, Article III of the

Constitution prohibits bankruptcy courts from finally adjudicating certain of those claims." *Exec.*

*Benefits v. Arkison*, 573 U.S. ___, 134 S. Ct. 2165, 2168 (2014) (citing *Stern*, 131 S. Ct. 2594).

*Stern* stands for the proposition that a bankruptcy court may not exercise final adjudicative

authority over a core claim where: (i) the claim is not a matter involving "public rights"; (ii) the

claim will not necessarily be resolved in ruling on a creditor's proof of claim; and (iii) the parties

did not unanimously consent to final adjudication by a non-Article III court. *Weisfelner v.*

*Blavatnik (In re Lyondell Chem. Co.)*, 467 B.R. 712, 720 (S.D.N.Y. 2012) (citing *Stern*, 131

S. Ct. at 2608, 2614, 2618).

In *Executive Benefits*, the Supreme Court clarified what bankruptcy courts should do

when they are confronted with "*Stern* claims"—core claims that are "designated for final

adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that

way as a constitutional matter." *Exec. Benefits*, 134 S. Ct. at 2170. When faced with *Stern*

claims, a bankruptcy court should simply "treat[] the claims as noncore" and "submit proposed

findings of fact and conclusions of law to the district court for de novo review." *Id.* at 2173.

Noncore claims—those within the bankruptcy court's "related to" jurisdiction—are not affected

by *Stern* and continue to "fit[] neatly within the existing jurisdictional scheme described in

[§] 157(c)(1)." *LaMonica v. Nexcen Brands, Inc. (In re Designer Equity Holding Co.)*, 2011 WL

5443068, at *1 (Bankr. S.D.N.Y. Nov. 9, 2011).

### ii.  This Court Has Subject-Matter Jurisdiction Over the Debtor's Claims Against the ParkStone Defendants

The ParkStone Defendants first move to dismiss the Complaint under Rule 12(b)(1) for

lack of subject-matter jurisdiction. Determining the existence of subject-matter jurisdiction is a

"threshold inquiry." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). A

bankruptcy court has subject-matter jurisdiction over claims as long as the claims are at least

"related to" a bankruptcy case. *See, e.g.*, *Empire State Bldg. Co. v. N.Y. Skyline, Inc. (In re N.Y.

Skyline, Inc.)*, 471 B.R. 69, 78 (Bankr. S.D.N.Y. 2012) (noting that bankruptcy courts have

subject-matter jurisdiction over claims as long as the claims are, "at a minimum, related to" a

bankruptcy case).

The scope of noncore or "related to" jurisdiction "has been broadly interpreted by the

Second Circuit." *City of Ann Arbor Emps. Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.*, 572

F. Supp. 2d 314, 317 (E.D.N.Y. 2008). Before confirmation of a chapter 11 plan, "related to

bankruptcy jurisdiction exists in any civil action where the outcome 'might have any conceivable

effect on a bankruptcy estate.'" *Bayerische Landesbank v. Deutsche Bank AG (In re Residential

Capital, LLC)*, 488 B.R. 565, 572 (Bankr. S.D.N.Y. 2013) (quoting *Publicker Indus. Inc. v. U.S.

(In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992)). "[A]n action has a

'conceivable effect' if 'the outcome could alter the debtor's rights, liabilities, options, or freedom

of action . . . and which in any way impacts upon the handling and administration of the bankrupt

estate.'" *Id.* at 573 (quoting *N.Y.C. Emps. Ret. Sys. v. Ebbers (In re WorldCom, Inc. Sec. Litig.)*,

293 B.R. 308, 317 (S.D.N.Y. 2003)).

> A key word in the test [for related to jurisdiction] is "conceivable." Certainty, or
> even likelihood, is not required. Bankruptcy jurisdiction will exist so long as it is
> possible that the proceeding may affect the debtor's rights or the administration of
> the estate.

*Winstar Holdings, LLC v. Blackstone Grp. L.P.*, 2007 WL 4323003, at *1 n.1 (S.D.N.Y. Dec. 10,

2007) (citation omitted).

The Supreme Court has held that "[p]roceedings 'related to' the bankruptcy include . . .

causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C.

§ 541." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n.5 (1995). Here, there is no dispute that

the Debtor owns the causes of action asserted against the ParkStone Defendants in the adversary

proceeding and that the causes of action became property of the estate upon the filing of the

petition under § 541. As a result, the claims asserted against the ParkStone Defendants are

necessarily at least "related to" the bankruptcy case and fall within the Court's noncore

jurisdiction. *See id.*; *accord Penthouse Media Grp. v. Guccione (In re Gen. Media, Inc.)*, 335

B.R. 66, 72 (Bankr. S.D.N.Y. 2005) (stating that "'related to' jurisdiction includes causes of

action owned by the debtor that become property of the estate under 11 U.S.C. § 541" (citing

*Celotex*, 514 U.S. at 307 n.5)). The ParkStone Defendants' request for dismissal for lack of

subject-matter jurisdiction is therefore denied.

### iii.   This Court May Not Enter Final Orders as to Counts 1, 2, 3, and 4 Against the ParkStone Defendants

Although this Court has subject-matter jurisdiction over the claims asserted against the ParkStone Defendants, this does not end the inquiry. The Court must still determine whether the claims are: (i) core claims which this Court has constitutional authority to finally adjudicate; (ii) "*Stern* claims" over which this Court lacks authority to enter final orders; or (iii) noncore claims that are merely "related to" the bankruptcy case.

Count 6 of the Complaint is plainly a core proceeding in which this Court may enter a final order. Count 6 requests disallowance of a portion of ParkStone's proof of claim for its prepetition secured debt. *See* Compl. ¶¶ 57–63. By filing a proof of claim, ParkStone "invoke[d] the claims-allowance process" and "subject[ed] itself to the equitable jurisdiction of the Court." *MCI WorldCom Commc'ns, Inc. v. Commc'ns Network Int'l, Ltd. (In re WorldCom, Inc.)*, 378 B.R. 745, 754 (Bankr. S.D.N.Y. 2007). Section 157(b)(2)(B) expressly provides that the "allowance or disallowance of claims against the estate" is a core proceeding. 28 U.S.C. § 157(b)(2)(B); *see also In re Salander-O'Reilly Galleries*, 453 B.R. 106, 118 (Bankr. S.D.N.Y. 2011) ("[A]llowance of claims is indisputably the realm of the bankruptcy court."). "Nothing in [*Stern*] removes the authority of the bankruptcy court to enter a final order or judgment in such matters." *Wilson v. Residential Capital, LLC (In re Residential Capital, LLC)*, 2014 WL 3057111, at *1 n.1 (Bankr. S.D.N.Y. July 7, 2014); *see also Schultze v. Chandler (In re Colusa Mushroom, Inc.)*, ___ F.3d ___, 2014 WL 3537030, at *2 n.1 (9th Cir. July 18, 2014) (noting that, in core proceedings, "the bankruptcy court's jurisdiction is not affected by either" *Stern* or *Executive Benefits*).

On the other hand, Counts 1, 2, 3, and 4 of the Complaint assert causes of action that rely entirely on state law and do not "arise in" or "arise in a case under" title 11. Those four counts

assert claims against the ParkStone Defendants for fraud, the equitable imposition of the terms of

the Loan Workout Agreement, unjust enrichment, and a finding that a joint venture was created

under New York law. Compl. ¶¶ 23–48. These claims "involve disputes over rights that . . . have

little or no relation to the Bankruptcy Code, do not arise under the federal bankruptcy law, and

would exist in the absence of the bankruptcy case." *Official Comm. of Unsecured Creditors of

the VWE Grp., Inc. v. Amlicke (In re VWE Grp., Inc.)*, 359 B.R. 441, 448 (S.D.N.Y. 2007)

(quoting *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld LLP*, 201 B.R. 635, 639 (S.D.N.Y.

1996)) (omission in original) (internal quotation marks omitted).

Accordingly, the Court finds that Count 6 of the Complaint is a core proceeding in which

this Court may enter a final order and Counts 1, 2, 3, and 4 are noncore, "related to" proceedings

in which the District Court must enter a final order and judgment after de novo review of this

Court's proposed findings of fact and conclusions of law.

**B.      Abstention Is Not Appropriate in this Case**

In the alternative to dismissal for lack of subject-matter jurisdiction, the ParkStone

Defendants request that the Court abstain from hearing the Debtor's claims. *See* Mem. of Law 2

("In addition to the jurisdictional bar that exists, the Court should abstain from hearing [the

claims against the ParkStone Defendants] as those claims involve purely 'private' as opposed to

'public' rights."); Reply Mem. of Law 4, No. 14-09005, ECF No. 23 (requesting "that the Court

abstain from adjudicating this adversary proceeding as the Court lacks authority to issue a final

judgment on any of the causes of action"). Neither the ParkStone Defendants nor the Debtor

briefed the legal standards for abstention by a bankruptcy court. The Court will therefore

consider whether abstention is appropriate under either the mandatory or discretionary prongs of

28 U.S.C. §§ 1334(c)(1) and (2).

    **i.**    <u>**Mandatory Abstention Is Not Appropriate**</u>

Section 1334(c)(2) mandates that bankruptcy courts abstain from hearing proceedings that are based upon state law claims and causes of action if six factors are present. *See* 28 U.S.C. § 1334(c)(2). Mandatory abstention is required if: (i) a motion is timely made; (ii) the action is based on a state law claim; (iii) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (iv) § 1334 provides the sole basis for federal jurisdiction; (v) an action was commenced in state court; and (vi) the action can be "timely adjudicated" in state court. *IIG Capital LLC v. Wollmuth Maher & Deutsch, LLP (In re Amanat)*, 338 B.R. 574, 581 (Bankr. S.D.N.Y. 2005). "The party seeking mandatory abstention must satisfy all of the requirements, and the failure to satisfy even one factor will be fatal." *In re Dreier*, 438 B.R. 449, 458 (Bankr. S.D.N.Y. 2010).

In this case, a critical requirement of mandatory abstention is not present: there is no "action . . . commenced . . . in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2). "[M]andatory abstention under § 1334(c)(2) is inapplicable unless there is a separate state court proceeding to which the federal court can defer." *ML Media Partners v. Century/ML Cable Venture (In re Adelphia Commc'ns Corp.)*, 285 B.R. 127, 143–44 (Bankr. S.D.N.Y. 2002). Here, the claims asserted in the adversary proceeding were brought in the first instance in this Court; there is no separate state court proceeding to which this Court can defer. Mandatory abstention is therefore inappropriate in this case. *See id.*

    **ii.**    <u>**Discretionary Abstention Is Not Appropriate**</u>

"Pursuant to 28 U.S.C. § 1334(c)(1), a court may abstain from hearing a proceeding within its jurisdiction in the interest of justice, or in the interest of comity with State courts or respect for State law." *Dreier*, 438 B.R. at 458 (internal quotation marks omitted). Courts in the

Second Circuit consider twelve factors in determining whether discretionary abstention under

§ 1334(c)(1) is appropriate:

     a.    the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention;

     b.    the extent to which state law issues predominate over bankruptcy issues;

     c.    the difficulty or unsettled nature of the applicable state law;

     d.    the presence of a related proceeding commenced in state court or other nonbankruptcy court;

     e.    the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

     f.    the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

     g.    the substance rather than form of an asserted "core" proceeding;

     h.    the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

     i.    the burden on the court's docket;

     j.    the likelihood that the commencement of the proceeding in a bankruptcy court involves forum-shopping by one of the parties;

     k.    the existence of a right to a jury trial; and

     l.    the presence in the proceeding of nondebtor parties.

*In re N.Y.C. Off-Track Betting Corp.*, 434 B.R. 131, 147 (Bankr. S.D.N.Y. 2010). Not all of the

factors are relevant in every case. *See Cody, Inc. v. County of Orange (In re Cody, Inc.)*, 281

B.R. 182, 190 (S.D.N.Y. 2002) (noting that courts consider "one or more ([but] not necessarily

all)" of the twelve factors). Abstention under 28 U.S.C. § 1334(c)(1) is left to the bankruptcy

court's discretion. *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223,

232 (2d Cir. 2002).

In this case, the Court finds that five of the factors support abstention. At least as to Counts 1, 2, 3, and 4 of the Complaint, state law issues predominate (Factor 2), there appears to be no basis for federal jurisdiction aside from § 1334 (Factor 5), and the claims are not core proceedings (Factor 7). In addition, the Receiver asserts that he is entitled to a jury trial (Factor 11) and there are three nondebtor defendants who have not filed proofs of claim in the bankruptcy case (Factor 12). The Court also finds that two factors are neutral: there is no evidence of forum-shopping by either party (Factor 10) and this case will not impose an undue burden on the Court's docket (Factor 9). *See N.Y.C. Off-Track Betting*, 434 B.R. at 153 (finding factor neutral where the court "will promptly decide the matters properly before it, regardless of the burdens it may impose on the Court's docket").

Although it is a close call, the Court finds that the factors that weigh against abstention are more persuasive than those in favor. The state law issues that predominate are not difficult or unsettled (Factor 3) and there is no pending action in a nonbankruptcy forum to which this Court could defer (Factor 4). More importantly, the resolution of the adversary proceeding directly impacts the feasibility of the Plan, such that the issues in this proceeding are inextricably intertwined with the main bankruptcy case (Factor 6). If the Court were to abstain from hearing the Debtor's claims, resolution of this chapter 11 case would depend on the prompt and efficient adjudication of this proceeding in a forum outside this Court's control. As a result, the Court believes that it is not feasible to sever the claims in the Complaint from the main bankruptcy case (Factor 8) and that abstaining from hearing this proceeding would be detrimental to the efficient administration of the estate (Factor 1).

For these reasons, the Court will not exercise its discretion to abstain from hearing the Debtor's claims against the ParkStone Defendants, which the Court perceives to be the primary

focus of the Debtor's bankruptcy case. *See In re Balco Equities, Inc.*, 323 B.R. 85, 93 (Bankr. S.D.N.Y. 2005) (declining to permissively abstain from matters involving property that the court perceived was "the primary focus of the bankruptcy case"). The ParkStone Defendants' request for abstention is denied.

**C.**     **The Complaint Should Not Be Dismissed Under Rule 12(b)(6)**

Turning to the merits of the Debtor's claims, the ParkStone Defendants first seek dismissal under Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), "a party may move to dismiss on the ground that the opposing party's complaint 'fail[s] to state a claim upon which relief can be granted.'" *Highland Capital Mgmt. v. UBS Sec. LLC (In re Lyondell Chem. Co.)*, 491 B.R. 41, 49 (Bankr. S.D.N.Y. 2013) (quoting Fed. R. Civ. P. 12(b)(6)). In this case, the ParkStone Defendants filed their answer to the Complaint before filing the Motion to Dismiss. As a result, the request for dismissal under Rule 12(b)(6) is untimely. *Morrison v. Amway Corp. (In re Morrison)*, 421 B.R. 381, 385 (Bankr. S.D. Tex. 2009); *Crisomia v. Parkway Mortg., Inc. (In re Crisomia)*, 2001 WL 1403531, at *1 n.1 (Bankr. E.D. Pa. Aug. 21, 2001) ("[A] post-answer Rule 12(b)(6) motion is untimely.").

Once the pleadings are closed, the appropriate provision for attacking the sufficiency of a complaint is Rule 12(c). *See* Fed. R. Civ. P. 12(c). Here, even if the ParkStone Defendants had not separately moved under Rule 12(c), the Court would construe the motion under Rule 12(b)(6) as a motion under Rule 12(c). *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) ("[A] motion to dismiss for failure to state a claim . . . that is styled as arising under Rule 12(b) but is filed after the close of pleadings[] should be construed . . . as a motion for judgment on the pleadings under Rule 12(c).").

**D.**     **Counts 1, 2, 3, 4, and 6 Should Be Dismissed Under Rule 12(c)**

Rule 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay

trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "In deciding a

Rule 12(c) motion, courts apply the same standard as that applicable to a motion under Rule

12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable

inferences in favor of the nonmoving party." *Katzenstein v. VIII SV5556 Lender, LLC (In re*

*Saint Vincents Catholic Med. Ctrs. of N.Y.)*, 440 B.R. 587, 593 (Bankr. S.D.N.Y. 2010); *see also*

*Patel*, 259 F.3d at 126 (stating that the standards for motions under Rules 12(b)(6) and 12(c) are

"identical"). "Judgment on the pleadings is appropriate where material facts are undisputed and

where a judgment on the merits is possible merely by considering the contents of the pleadings."

*Entegra Power Grp. v. Dewey & Leboeuf LLP (In re Dewey & Leboeuf LLP)*, 493 B.R. 421, 427

(Bankr. S.D.N.Y. 2013) (quoting *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.

1988)) (internal quotation marks omitted).

**i.**     **Count 1 (Fraud)**

In Count 1, the Debtor alleges that ParkStone falsely claimed that it would agree to

accept a reduced payoff of the Note ($1.5 million and later $2.2 million) as provided for in the

Loan Workout Agreement. Compl. ¶ 24. The alleged purpose of this misrepresentation was to

induce the Debtor to complete construction of the Building, obtain a certificate of occupancy,

and locate a suitable tenant. *Id.* ¶¶ 27–28. According to the Complaint, the representation "w[as]

false in that [the ParkStone Defendants] did not intend to comply" with the terms of the Loan

Workout Agreement. *Id.* ¶ 27. The Debtor contends that the ParkStone Defendants knew that the

representation was false when it was made. *Id.* ¶ 28.

In New York, "[t]he elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009). "General allegations that [a] defendant entered into a contract while lacking the intent to perform it are insufficient to support" a claim for fraud. *New York University v. Continental Ins. Co.*, 662 N.E.2d 763, 769 (N.Y. 1995); *see also WIT Holding Corp. v. Klein*, 724 N.Y.S.2d 66, 68 (App. Div. 2001) ("A mere misrepresentation of an intention to perform under [a] contract is insufficient to allege fraud."). In other words, "simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim." *Best Western Int'l, Inc. v. CSI Int'l Corp.*, 1994 WL 465905, at *4 (S.D.N.Y. Aug. 23, 1994).

Here, even assuming that the Debtor has met the heightened pleading standard of Rule 9(b),[2] the Debtor's fraud claim against the ParkStone Defendants fails as a matter of law. The alleged fraudulent representation of the ParkStone Defendants' intent to perform under the Loan Workout Agreement cannot form the basis of a fraud claim under New York law. *New York University*, 662 N.E.2d at 769; *WIT Holding*, 724 N.Y.S.2d at 68. Thus, the Debtor "can prove no set of facts in support of [its] claim that would entitle [it] to relief" under Count 1. *Cairns & Assocs., Inc. v. Conopco, Inc. (In re Cairns & Assocs., Inc.)*, 2006 WL 2583304, at *2 (Bankr. S.D.N.Y. Aug. 29, 2006). As a result, the Court recommends that the District Court dismiss Count 1 as against the ParkStone Defendants under Rule 12(c).

---

[2]  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

ii.    **Count 2 (Imposition of the Loan Workout Agreement)**

In Count 2, the Debtor requests that the Court find that the Debtor and ParkStone agreed to modify the Note and Mortgage pursuant to the Loan Workout Agreement. Compl. ¶ 36. According to the Complaint, "the parties had agreed to all essential terms of the agreement and mutually intended to be bound to same, as is evidenced not only by their communications but the parties' actions as well." *Id.* The Debtor therefore requests that the Court "impose the terms of the [Loan Workout Agreement] on the parties." *Id.* It is undisputed that the Loan Workout Agreement was never reduced to writing.

New York's statute of frauds provides that "[a]n estate or interest in real property . . . or in any matter related thereto, cannot be created . . . unless by act or operation of law, or by a deed or conveyance in writing." N.Y. Gen. Oblig. Law § 5-703(1). In New York, the modification of a mortgage is "subject to [the] statute of frauds and accordingly[] must be in writing to be enforceable and signed by the party to be charged." *Onewest Bank, FSB v. Davies*, 2013 WL 846573, at *5 (N.Y. Sup. Ct. Feb. 22, 2013).

Courts in New York also apply the parol evidence rule to bar parties "from introducing evidence of an alleged oral modification of [a] note and mortgage." *Solomon v. Burden*, 961 N.Y.S.2d 535, 536 (App. Div. 2013); *see also Eastern Sav. Bank, FSB v. Sassouni*, 892 N.Y.S.2d 421, 422 (App. Div. 2009) ("[E]vidence of an alleged oral modification . . . which contradicts an express term of [a] note is barred by the parol evidence rule."). Section 15-301(1) of the General Obligations Law provides that contracts which prohibit oral modifications (such as the Note and Mortgage in this case) "cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement . . . is sought." N.Y. Gen. Oblig. Law § 15-301(1). "Where . . . oral promises are directly contradicted by the

unambiguous terms of the parties' mortgage documents which preclude[] any oral modification, the writing controls." *Can-Am Dev. Corp. v. Meldor Dev. Corp.*, 625 N.Y.S.2d 600, 601 (App. Div. 1995). Any attempt to modify an agreement which prohibits oral modifications is "not legally effective under New York law." *Capital One Nat'l Ass'n v. 48-52 Franklin, LLC*, 2014 WL 1386609, at *6 (S.D.N.Y. Apr. 8, 2014).

New York recognizes an exception to the requirement of a writing "where there has been part performance unequivocally referable to the contract by the party seeking to enforce the agreement." *Luft v. Luft*, 859 N.Y.S.2d 694, 695 (App. Div. 2008). "'Unequivocally referable' conduct is conduct which is 'inconsistent with any other explanation.'" *Barretti v. Detore*, 944 N.Y.S.2d 166, 169 (App. Div. 2012) (quoting *745 Nostrand Retail Ltd. v. 745 Jeffco Corp.*, 854 N.Y.S.2d 773, 774 (App. Div. 2008)). "Where the possibility of other reasons for the conduct exists, the performance is equivocal." *Capital One*, 2014 WL 1386609, at *7 (quoting *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 122 (2d Cir. 1998)) (internal quotation marks omitted). Similarly, conduct is not unequivocally referable if it can be explained as "preparatory steps taken with a view toward consummation of an agreement in the future." *Anostario v. Vicinanzo*, 450 N.E.2d 215, 216 (N.Y. 1983).

Here, the Debtor's conduct was not "unequivocally referable" to the Loan Modification Agreement. After the Receiver was appointed, the Debtor completed the construction of the Building and retained SRI to locate a new tenant for the Property. Compl. ¶ 33(a). These actions are not "unintelligible or at least extraordinary, explainable only with reference to" the Loan Workout Agreement. *Anostario*, 450 N.E.2d at 216 (citation omitted). The Debtor's actions in attempting to maximize the value of the Property and obtain a source of cash flow are completely consistent with the Debtor's existing obligations under the Note and Mortgage even without the

existence of the Loan Workout Agreement. As a result, the Loan Workout Agreement (a

purported oral modification of the Note and Mortgage) is unenforceable, *Capital One*, 2014 WL

1386609, at \*6. It is recommended that the District Court dismiss Count 2.

### iii.   Count 3 (Unjust Enrichment)

In Count 3, the Debtor requests that the Court "impose a constructive contract between

the parties to prevent the [D]efendants' unjust enrichment." Compl. ¶ 41. The crux of Count 3 is

the Debtor's allegation that the ParkStone Defendants wrongfully induced the Debtor to continue

to invest in the Property. *Id.* ¶¶ 38–39. Believing that ParkStone would abide by the terms of the

Loan Workout Agreement, the Debtor expended its efforts in improving the Property without

receiving any compensation in return. *Id.* ¶ 39. These improvements have benefitted ParkStone

by increasing the value of its collateral. *Id.* As the ParkStone Defendants have refused to comply

with the Loan Workout Agreement, the Debtor argues that "equity and good conscious [sic]

require that restitution be made." *Id.* ¶ 40.

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish

(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good

conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of

N.J.*, 448 F.3d 573 (2d Cir. 2006) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000))

(internal quotation marks omitted). Unjust enrichment is a "quasi-contract claim . . . [that] the

law creates in the absence of any agreement." *Goldman v. Metropolitan Life Ins. Co.*, 841 N.E.2d

742, 746 (N.Y. 2005). Thus, in New York, it is well-recognized that an action for unjust

enrichment may only be brought in the absence of a written contract relating to the same subject

matter. *See Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987).

"Where the parties executed a valid and enforceable written contract governing a particular

subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 274 (N.Y. 2009).

Here, the Note and Mortgage are valid and enforceable contracts that preclude an unjust enrichment claim against the ParkStone Defendants. *See Hinds v. Option One Mortg. Corp.*, 2012 WL 6827477, at *6–7 (E.D.N.Y. Dec. 6. 2012), *report and recommendation adopted*, 2013 WL 132719 (E.D.N.Y. Jan. 10, 2013) (unjust enrichment claim against mortgagee barred as a matter of law by note and mortgage); *Scott v. Saxon Loan Servs.*, 2010 WL 1529281, at *11–12 (E.D.N.Y. Apr. 9, 2010) (same). Because a lender can only recover through a foreclosure sale monies to which it is legally entitled, a lender's exercise of its rights pursuant to a valid note and mortgage cannot "unjustly" enrich the lender. *See Mazeh Const. Corp. v. VNB N.Y. Corp.*, 2012 WL 2097690, at *6 (N.Y. Sup. Ct. June 11, 2012).

In a case similar to this one, the court in *Hinds* dismissed an unjust enrichment claim by a borrower against a mortgagee seeking to recover the "extensive amount of equity [that the borrower] put into the property." *Hinds*, 2012 WL 6827477, at *6. The *Hinds* court held that the borrower's unjust enrichment claim was "foreclosed by the existence of a valid contract, as the mortgage expressly provides [the mortgagee] the right to bring a lawsuit of foreclosure and sale to collect all costs, disbursements, and allowances allowed under the law." *Id.* Here, the Debtor seeks to assert an unjust enrichment claim against the ParkStone Defendants for the "actual and substantial increased value" of the Property that resulted from the Debtor's investment. Compl. ¶ 39. This claim fails as a matter of law due to the existence of the Note and Mortgage. *Hinds*, 2012 WL 6827477, at *6; *Scott*, 2010 WL 1529281, at *11–12. It is recommended that the District Court dismiss it under Rule 12(c).

iv.    **Count 4 (Imposition of a Joint Venture)**

Pursuant to Count 4, the Debtor contends that the parties "entered into an intentional and voluntary joint venture as defined by the law." Compl. ¶ 43. Specifically, the Debtor contends that: (i) "each party to the venture made a contribution to the venture," *id.* ¶ 44; (ii) "[t]he parties intend[ed] to share the profits of the completed venture," *id.* ¶ 45; (iii) "[e]ach of the parties had a joint proprietary interest and right of mutual control over the project/venture," *id.* ¶ 46; and (iv) "[t]he parties engaged in one single business transaction," *id.* ¶ 47. Accordingly, the Debtor requests that the Court "find that the parties have formed a joint venture and require the parties' compliance therewith." *Id.* ¶ 48.

In New York, a party seeking to establish the existence of a joint venture must establish the existence of five elements: (i) a specific agreement between two or more persons to carry out an enterprise for profit; (ii) evidence in the agreement of the parties' intent to be joint venturers; (iii) a contribution of property, financing, skill, knowledge, or effort by each party to the joint venture; (iv) some degree of joint control over the venture by each party; and (v) the existence of a provision for the sharing of both profits and losses. *Cohen v. Treuhold Capital Grp., LLC (In re Cohen)*, 422 B.R. 350, 377 (E.D.N.Y. 2010) (citing *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 67–68 (2d Cir. 2003)). "Failure to establish any element . . . will be fatal to the party asserting the existence of the joint venture." *Id.* (citing *Kidz Cloz, Inc. v. Officially For Kids, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004)).

In the Complaint, there is no allegation that the parties agreed to share losses in addition to profits. Rather, the Complaint merely alleges that "[t]he parties intend[ed] to share the profits of the completed venture." Compl. ¶ 45. "[S]haring of *both profits and losses* . . . is essential to the creation of a joint venture." *Cohen*, 422 B.R. at 377 (citing *Williams v. Forbes*, 571 N.Y.S.2d

818, 819 (App. Div. 1991)) (emphasis added); *see also Accent Assocs., Inc. v. Wheatley Constr. Corp.*, 701 N.Y.S.2d 667, 667 (App. Div. 2000) (holding that a plaintiff failed to state a claim for a breach of a joint venture agreement where it "failed to allege . . . responsibility for losses"). "[I]f a party only stands to lose the individual services it invested in the business endeavor, it is not incurring a shared loss as required by a joint venture agreement." *Cohen*, 422 B.R. at 377 (citing *Milton Abeles, Inc. v. Creekstone Farms Premium Beef, LLC*, 2009 WL 875553, at *6 (E.D.N.Y. Mar. 30, 2009)). "Under New York law, where a plaintiff fails to plead a mutual promise or undertaking to share the burden of losses of the alleged enterprise, a cause of action alleging a joint venture should be dismissed." *Jacobs v. Baum*, 2008 WL 819037, at *6 (N.D.N.Y. Mar. 24, 2008) (quoting *Latture v. Smith*, 766 N.Y.S.2d 906, 906–07 (App. Div. 2003)) (internal quotation marks omitted).

Even if the Complaint were amended to allege a sharing of losses as well as profits, the Count 4 claim would nevertheless fail as a matter of law. The Complaint affirmatively alleges that the parties intended to reduce the Loan Workout Agreement to writing. *E.g.*, Compl. ¶ 14 (stating that a written agreement "would be delivered"); *id.* ¶ 15 (stating that ParkStone "was drafting the agreement [and] that the agreement would be provided for [the Debtor's] review"). The Debtor attached emails to the Complaint as Exhibit F which confirm that the agreement was to be reduced to writing. *E.g.*, E-mails 10 (Compl. Ex. F) ("Please forward a draft [of the agreement] at your earliest convenience. Respectfully, I . . . hope the agreement contains all of the terms and conditions previously discussed without any surprises."); *id.* at 11 ("I need this agreement sooner than later and I sincerely hope it is what we discussed."). It is undisputed that the Loan Workout Agreement was never executed.

In New York, a joint venture claim fails as a matter of law where "the parties intended to finalize their agreement in a writing[] which never materialized." *Langer v. Dadabhoy*, 843 N.Y.S.2d 262, 263 (App. Div. 2007). In such a case, "there [is] no mutual assent or meeting of the minds as to the proposed joint venture." *Id.* In dismissing a joint venture claim as a matter of law, the *Langer* court relied on "documentary evidence in the form of emails" which "conclusively established" the parties' intent to reduce their agreement to writing. *Id.* Here, the Debtor's allegations and the emails attached to the Complaint conclusively establish that the parties intended to finalize the Loan Workout Agreement in a writing that never materialized. As a result, the Debtor's joint venture claim fails as a matter of law, and it is recommended that the District Court dismiss it under Rule 12(c).

### v.    Count 6 (Disallowance of Default Interest)

Count 6 of the Complaint asserts that the default interest rate "constitutes a penalty" and requests that the Court "not permit [ParkStone] to collect the default interest rate." Compl. ¶¶ 61, 63. According to the Complaint, the Debtor contends that the application of the default interest rate would "substantially reduce[] the value of the estate" and "cause substantial harm to the significant class of unsecured creditors in this case." *Id.* ¶ 60. In addition, the Debtor contends that the application of the default rate "substantially impairs the [D]ebtor's ability to obtain a 'fresh start.'" *Id.* ¶ 62.

"Section 506(b) . . . gives a bankruptcy court limited discretion to modify the amount of *postpetition* interest that an oversecured creditor may collect as part of its claim." *In re 785 Partners, LLC*, 470 B.R. 126, 133 (Bankr. S.D.N.Y. 2012) (emphasis added). Courts may disallow postpetition interest where: (i) there has been creditor misconduct; (ii) application of the default interest rate would harm unsecured creditors; (iii) the default interest rate constitutes a

penalty; or (iv) application of the default interest rate would impair the debtor's "fresh start." *In re Gen. Growth Properties, Inc.*, 451 B.R. 323, 328 (Bankr. S.D.N.Y. 2011). However, § 506 "does not apply to a creditor's claim for prepetition interest, a claim that must instead be determined under state law." *785 Partners*, 470 B.R. at 133. "Prepetition interest is generally allowable to the extent and at the rate permitted under the applicable nonbankruptcy law, including the law of contracts." *Key Bank Nat'l Ass'n v. Milham (In re Milham)*, 141 F.3d 420, 423 (2d Cir. 1998).

In New York, "[i]t is well settled that an agreement to pay interest at a higher rate in the event of default or maturity is an agreement to pay interest and not a penalty." *Jamaica Sav. Bank, FBS v. Ascot Owners, Inc.*, 665 N.Y.S.2d 858, 858 (App. Div. 1997). "[W]hen two sophisticated parties enter into a contract calling for an established rate on default, th[e] [c]ourt will not disturb the agreement absent persuasive evidence of overreaching." *In re Woodmere Invs. Ltd. P'ship,* 178 B.R. 346, 355 (Bankr. S.D.N.Y. 1995). Even where the default rate strikes the judge as high, a court cannot rewrite the parties' bargain based on its own notions of fairness and equity. *See Cruden v. Bank of N.Y., 957 F.2d 961, 976 (2d Cir.1992) ("A court may neither rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous . . . nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case."). As the court observed in *785 Partners*:

> The requirement that the agreement must be enforced in accordance with its terms has even greater force in the context of real property transactions, where commercial certainty is a paramount concern and where . . . the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length.

470 B.R. at 132 (quoting *Wallace v. 600 Partners Co.*, 658 N.E.2d 715, 717 (N.Y. 1995)) (internal quotation marks omitted).

Here, the Debtor asks this Court to "find[] that the default rate of interest provided for in the [N]ote and [M]ortgage is unenforceable." Compl. 19. The Court cannot do so. The Note and Mortgage clearly and unambiguously provide for the default interest rate. *See* Note ¶ 1; Mortg. ¶ 1.8. The Debtor has not alleged that the terms were negotiated between unsophisticated parties or that there was any evidence of overreaching by HVB, the party with whom the Debtor originally entered into the Note and Mortgage. Applying New York law, the Court finds "no basis . . . to disturb the parties' bargain" as to the prepetition default interest. *785 Partners*, 470 B.R. at 132. The Debtor's assertions that the default interest rate will harm unsecured creditors and impair the debtor's fresh start are properly directed to a claim for *postpetition* interest, and are inapplicable to ParkStone's claim for *prepetition* interest.[3] *Id.* at 133. The Court finds that the Debtor's Count 6 claim for disallowance of ParkStone's claim for prepetition default interest must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court finds that judgment should be entered on the pleadings dismissing Counts 1, 2, 3, 4, and 6 as against the ParkStone Defendants. The ParkStone Defendants are directed to submit an order for entry by this Court as to Count 6. The Court respectfully recommends that the District Court treat this Memorandum Decision as proposed findings of fact and conclusions of law resolving Counts 1, 2, 3, and 4 as set forth herein.

Dated: Poughkeepsie, New York
July 29, 2014

/s/ Cecelia G. Morris
CECELIA G. MORRIS
CHIEF U.S. BANKRUPTCY JUDGE

---

[3] ParkStone has not made any claim for postpetition default interest in this case.